**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PUERTO RICO**

UNITED STATES OF AMERICA,

    Plaintiff

        v.

ANGEL AYALA-VAZQUEZ, ET AL.

    Defendants.

CR. NO. 09-173 (PG)

**OPINION AND ORDER**

Defendant Angel Ayala-Vazquez ("Defendant") filed a motion for change of venue (Docket No. 753) arguing, under Federal Rule of Criminal Procedure 21(a), that the pretrial publicity concerning Defendant's prosecution has been extensive and sensational to the extent that he cannot receive a fair trial in the District of Puerto Rico.  The Government filed an "Omnibus Response" (Docket No. 817) opposing the motion and requesting that the Court apply its opposition to all defendants that have joined the pending motion.  For the reasons that follow, the Court **DENIES** Defendant's motion for change of venue.

**I. Background**

On September 28, 2009, Defendant, the alleged ring-leader of this sixty-five co-defendant criminal case, was charged by way of superseding indictment with six counts of narcotics violations involving heroin, crack cocaine, cocaine, and marijuana (Docket No. 43) all in violation of 21 U.S.C. §§ 841(a)(1), 846, 860, 963, and 18 U.S.C. § 2.  On April 15, 2010, a grand jury returned a second superseding indictment adding five counts based on a money laundering conspiracy (Docket No. 775), all in violation of 18 U.S.C. § 1956(h).

Criminal No. 09-173(PG)                                                  Page 2

On April 7, 2010, Defendant filed a Federal Rule of Criminal Procedure 21(a) motion for change of venue arguing that, prior to and since the his arrest, the pretrial publicity concerning Defendant's prosecution has been extensive and sensational to the extent that he cannot receive a fair trial in the District of Puerto Rico.  In support of his motion, Defendant attaches over thirty newspaper and other media articles as a "sampling of the deluge of articles, internet postings and accounts given on television and during press conferences about the Defendant." (See Docket No. 753 at 3.)  The statements in these articles, according to Defendant, "go long beyond factual recitations of the criminal process and are clearly designed to inflame the community against the defendant." (Id.)  As an example, he quoted statements made by the Drug Enforcement Agency (DEA) agent in charge of the Caribbean Division, as well as Puerto Rico's Governor and Police Chief, touting Defendant's capture, in addition to other newspaper headlines describing him as the most powerful narco-trafficker on the island.  Because Defendant submits that no one who would be called as a juror in Puerto Rico will not have heard of him, he argues that a change of venue is the only mechanism that will insure a fair trial.  Defendant suggests that venue be located in either the Virgin Islands, Boston, or Miami.

**II. Discussion**

The Sixth Amendment of the United States Constitution guarantees a criminal defendant the right to be tried by "an impartial jury of the state and district wherein the crime shall have been committed. . . ." U.S. Const. amend. VI.  This standard does not, however, require that the jurors be totally ignorant of the facts and issues involved, for:

> in these days of swift, widespread and diverse methods of communication an important case can be expected to arouse the interest of the public in the vicinity, and scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case.  This is particularly true in criminal cases.  To hold that the mere

existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard.

United States v. Moreno Morales, 815 F.2d 725, 732 (1st Cir. 1987) (quoting Irving v. Dowd, 366 U.S. 717, 722 (1961)).

In light of these observations, a change of venue is proper "if the court is satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there." FED. R. CRIM. P. 21(a). In making this determination, the Court asks "1) whether the degree of inflammatory publicity ha[s] so saturated the community such as to make it 'virtually impossible to obtain an impartial jury,' or 2) if prejudice cannot be presumed, whether nonetheless the empaneled jury [is] actually prejudiced against the defendant." United States v. Misla-Aldarondo, 478 F.3d 52, 58 (1st Cir. 2007) (internal citations omitted). As in the First Circuit's Misla-Aldarondo case, Defendant here does not argue actual juror prejudice, but only that prejudice should be presumed from the extent of the pretrial publicity, and therefore the Court finds the First Circuit's most recent articulation of this standard particularly instructive.

"A presumption of prejudice is reserved for those extreme cases where publicity is both extensive and sensational in nature. Merely a high volume of media coverage is not sufficient to presume prejudice, if that coverage is factual, as opposed to inflammatory." Id. (citations and internal quotation marks omitted). "[M]ere exposure of the potential jury to news reports regarding the crime does not, in and of itself, result in an inability to select an impartial jury." United States v. Perez-Gonzalez, 445 F.3d 39, 46 (1st Cir. 2006).

Another way the Court may judge the partiality of the community is "by looking to the 'length to which the trial court must go in order to select

Criminal No. 09-173(PG)                                                                 Page 4

jurors who appear to be impartial.'" See Misla Aldarondo, 478 F.3d at 58 (quoting Murphy v. Florida, 421 U.S. 794, 802-03 (1975); see also United States v. Angiulo, 897 F.2d 1169, 1181-82 (1st Cir. 1990) (finding two factors that could call for a presumption of prejudice, one, inflammatory publicity, and two, the length to which a trial court must go in selecting impartial jurors)). "In general, '[it] is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.'" Misla Aldarondo, 478 F.3d at 58-59 (quoting Dobbert v. Florida, 432 U.S. 282, 302 (1977). "But when a large percentage of the venire is disqualified, this evidence of prejudice in the community may lead a court to 'properly question the remaining juror's avowals of impartiality.'" Id. at 59 (quoting Angiulo, 897 F.2d at 1181-82 (1st Cir. 1990)).

It is important to note that the Court's determination as to the impartiality of jurors during this pre-trial stage may be set aside only for abuse of discretion due to the "special deference" given to a trial court's assessment of juror impartiality, which derives from the "fundamental role" that demeanor plays in determining juror credibility and in simply understanding what a potential juror is saying. See Moreno Morales, 815 F.3d at 733 (citations omitted); see also Misla Aldarondo, 478 F.3d at 58 (citing United States v. Brandon, 17 F.3d 409, 441 (1st Cir. 1994)(establishing abuse of discretion standard of appellate review for the denial of change of venue motion)).

As Defendant's motion is not concerned with actual but only presumed juror prejudice and voir dire has not yet occurred, the Court must simply ask whether the degree of inflammatory publicity has so saturated the community to make it virtually impossible to obtain an impartial jury, even despite protective measures that the Court could take to ensure juror impartiality. As the First Circuit observed in Misla Aldarondo, the presumption of juror prejudice is reserved for "extreme cases." Misla Aldarondo, 478 F.3d at 58. In that case,

the appellate court did not find the publicity surrounding a well-known public figure, the former Speaker of the Puerto Rico House of Representatives, convicted of extortion and money laundering while simultaneously investigated on charges of sexual assault on a minor, to be an extreme case even though it was "undoubtedly extensive." Id. at 59.  The publicity in that case included one hundred and eighty (180) articles as well as posters put up throughout the city in which the trial was held bearing the defendant's photograph and the caption "stealing prohibited." Id. at 57-59.  If that kind of pre-trial publicity was held to be insufficiently inflammatory, then the collection of run-of-the-mill and occasionally sensationalistic news articles involved in this case cannot be held to pass muster.

   The Court finds that extensive pretrial publicity has surrounded defendant Angel Ayala Vazquez from the moment of his arrest and throughout the criminal proceedings.  The Court holds, however, that the publicity is not so widespread, inflammatory, or sensational as to require a presumption of prejudice, especially in light of protective measures it could undertake to guarantee Defendant his right to a fair and impartial trial, such as comprehensive and individualized voir dire.  The array of newspaper articles attached to Defendant's motion is largely factual in nature, concerning the charges against Defendant and the alleged conduct that underlies the indictments.  While here Defendant presented over 30 newspaper articles - and undoubtedly there have been and will be more articles since the filing of his motion -  this does not rise to the level of the 44 articles in United States v. Brandon, the 180 articles in Misla Aldarondo, or the 212 articles in United States v. Medina, that the First Circuit has found insufficiently voluminous and inflammatory to overturn the district court's denial of a motion for change of venue.  See Brandon, 17 F.3d at 441; Misla Aldarondo, 478 F.3d 52 at 59; United States v. Medina, 761 F.2d 12, 18 (1st Cir. 1985).

Criminal No. 09-173(PG)                                              Page 6

The Court recognizes that in the news coverage frequent references were made to Defendant as the reputed "head of the largest drug trafficking organization in Puerto Rico", the "most powerful and dangerous narcotrafficker on the island," in addition to his alleged ties to other notorious criminal figures and well-known musical artists.  However, the Court finds guidance in the First Circuit case United States v. Angiulo, where the appellate court acknowledged that while frequent references were made to the "reputed crime figure Gennaro Angiulo," "mafia boss Angiulo," or "reputed leader of Boston underworld," such references "although not phrased in the most genteel or flattering manner, fall significantly short of the type of emotionally charged, inflammatory, sensationalistic coverage needed to support a presumption of evidence." Angiulo, 897 F.2d at 1181; accord United States v. Ayala-Martinez, 24 F. Supp. 2d 165, 168 (D.P.R. 1998) (noting that references to the defendant as the head of a "drug empire" and a "notorious drug baroness" did not rise to the "required standard of inflammatory or prejudicial characterizations.")

Defendant has simply not convinced the Court that there is a sufficiently high volume of inflammatory and sensationalistic publicity to distinguish this case from any other case involving a notorious defendant accused of newsworthy crimes.  As the Supreme Court has articulated, "extensive knowledge in the community of either the crimes or the putative criminal is not sufficient by itself to render a trial constitutionally unfair." Dobbert v. Florida, 432 U.S. 282, 303 (1977).  The fact that the community is made well aware of the charges against Defendant cannot provide a "basis to presume unfairness of constitutional magnitude at this trial[,]" in the absence of a "'trial atmosphere . . . utterly corrupted by press coverage.'" Id. (quoting Murphy v. Florida, 421 U.S. 794, 798 (1975).  The press coverage so far in this case has not come close to utterly corrupting Defendant's upcoming trial.

Criminal No. 09-173(PG)                                                                     Page 7

Furthermore, the Court cannot evaluate the second factor of the presumed prejudice inquiry, that is, the length to which the Court must go in selecting impartial jurors, since the jury selection process has not yet begun.  It is worth noting that the disqualification of a large percentage of the jury venire for possible bias may raise a red flag. See Misla Aldarondo, 478 F.3d at 59 (finding 15% insufficient to presume prejudice in the community and citing cases holding the same for up to 25% of the jury venire being either disqualified or expressing an opinion as to the defendant's guilt). But see Irvin v. Dowd, 366 U.S. 717, 727 (1961) (prejudice presumed where 90% of venire "entertained some opinion as to guilt.")  This counsels the Court to adopt measures to screen the jury pool for possible bias such as extensive and individualized voir dire. See FED. R. CRIM. P. 24(a).  This also counsels the Court to leave open the possibility for Defendant to file a subsequent motion for change of venue after a more substantial showing of presumed juror prejudice after voir dire is completed. See Misla Aldarondo, 478 F.3d at 60 n.4 (noting that in denying the defendant's motion to reconsider changing venue, the district court said that it would "reconsider the issue of venue if the voir dire was unsuccessful.")

Finally, the Court wishes to emphasize that while the tendency toward sensationalism in the news may reflect the prevailing journalistic practices of the day, it should not be allowed to dictate a change of venue that would cause great inconvenience to the parties involved in the case, not to mention a waste of judicial resources already expended, at least in the absence of extreme circumstances.  While the court cannot control what the media will report, it can set parameters to ensure jury impartiality that should be exhausted before granting such a drastic remedy.

**III. Conclusion**

Criminal No. 09-173(PG)                                           Page 8

    For the reasons explained above, the Court **DENIES** Defendant's motion for change of venue.

    **IT IS SO ORDERED.**

    In San Juan, Puerto Rico, May 11, 2010.

                                        <u>S/ JUAN M. PÉREZ-GIMÉNEZ</u>
                                        JUAN M. PÉREZ-GIMÉNEZ
                                        UNITED STATES DISTRICT JUDGE